WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darcy Lynn Wyatt,<br><br>                Plaintiff,<br><br>v.<br><br>Andrew Saul,<br><br>                Defendant. | No. CV-18-0416-TUC-LCK<br><br>**ORDER** |

Plaintiff Darcy Wyatt filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Wyatt's Opening Brief, Defendant's Responsive Brief, and Wyatt's Reply. (Docs. 16-18.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record, the Court remands for further proceedings.

**PROCEDURAL HISTORY**

Wyatt filed an application for Disability Insurance Benefits (DIB) in May 2015. (Administrative Record (AR) 298.) She alleged disability from November 1, 2008. (*Id.*) Wyatt's application was denied upon initial review (AR 196-205) and on reconsideration (AR 206-21). A hearing was held on May 16, 2017. (AR 167-95.) Subsequently, the ALJ found that Wyatt was not disabled. (AR 25-32.) The Appeals Council denied Wyatt's request for review. (AR 1.)

## FACTUAL HISTORY

Wyatt was born in 1958 and was 59 years of age at the time of the ALJ's decision. (AR 298.) The ALJ found that Wyatt had severe impairments of COPD, Crohn's disease, right degenerative meniscus tear without mechanical symptoms, and status post double mastectomy. (AR 27.) The ALJ determined Wyatt had the Residual Functional Capacity (RFC) to perform the full range of light work. (AR 29.) The ALJ concluded at Step Four, based on the testimony of a vocational expert, that Wyatt could perform her past relevant work as a gas station cashier, gas station manager, and retail cashier. (AR 31.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported

by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Wyatt argues the ALJ committed two errors: (1) he failed to provide clear and convincing reasons for rejecting her symptom testimony; and (2) he failed to account for limitations arising from her Crohn's disease in the RFC.

**Wyatt's Symptom Testimony**

Wyatt argues the ALJ failed to provide clear and convincing reasons to reject her symptom testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Wyatt had satisfied part one of the test by proving impairments that could produce the symptoms alleged. (AR 30.) Next, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (holding an ALJ can reject claimant testimony if he finds evidence of malingering). The ALJ did not make an affirmative finding of malingering. Therefore, to support his discounting of Wyatt's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Robbins*, 466 F.3d at 883.

In July 2015, Wyatt completed an Exertional Daily Activities Questionnaire in which she stated that when she felt up to it she would do light chores for a maximum of ten minutes, such as a load of laundry, loading the dishwasher, feeding the rabbits, or watering plants, but most of the time she lay in bed watching television with a one to three hour daily nap (AR 384, 385); her ability to walk and sit was very limited due to pain and incontinence, but she would go to the store for up to twenty minutes with her husband (AR 384); she could drive to the doctor's office but her husband usually drove her (AR 385).

At the hearing, in May 2017, Wyatt testified that her inability to work was due to pain, incontinence, and infections stemming from her Crohn's disease.[1] (AR 174.) The infections caused flu-like symptoms every few months and were resistant to treatment. (AR 184.) She stated that she alternated between diarrhea incontinence and constipation and bloating causing pain. (AR 174-75.) She needed to be close to the bathroom because she had to go with little warning many times a day. (AR 183.) She testified that when she was up to it she would water plants or help with dishes, but she rarely left the house except for

---

[1] In discussing Wyatt's symptom testimony, the ALJ summarized the July 2015 Daily Activities Questionnaire but did not mention her 2017 hearing testimony. (AR 29.)

doctor's appointments. (AR 175.) Her husband did the cooking and most of the shopping, and she spent much of her day in bed. (AR 176-77.) She tried to move around and did physical therapy after her double mastectomy, but her movement was limited from scarring. (AR 176, 183.) She tore her meniscus and it would swell up if she walked for twenty minutes. (AR 180.) She could sit for an unlimited period if she didn't need to go to the bathroom or was not in pain; however, most of the time, she had knee and/or stomach pain. (AR 181.) For pain she took only Tylenol, which helped, but was reluctant to become dependent on pain meds. (AR 182.) She felt her memory and comprehension had suffered and she was dependent on her husband. (AR 184.)

First, the ALJ found that Wyatt's testimony about her limitations was not fully consistent with the medical record. (AR 30.) In particular, the ALJ noted that examination results "were generally mild." (*Id.*) The ALJ cited the following records: October 2010, denied incontinence; January 2013, bilateral lower extremity edema; January 2015, double mastectomy; April 2015, COPD and mild persistent asthma diagnoses; June 2015, ileocolic resection and findings consistent with active inflammatory bowel disease; July 2015, Crohn's disease stable on current medication; August 2015, diminished breath sounds, normal gait, no edema; October 2015, no edema, mildly decreased appetite; January 2016, active Crohn's disease, possible small bowel obstruction; February 2016, Crohn's disease stable; February to April 2016, bilateral total mastectomy, improved to healed; April 2017, complex nondisplaced tear of medial meniscus of right knee; April 2017, asthma mild, normal gait and standing without difficulty, respiratory effect normal, mild right knee swelling and pain but no mechanical symptoms. (AR 29-30.)

The Court assesses the complete Administrative Record, including medical records with dates prior to the ALJ's decision but submitted for the first time to the Appeals Council. (AR 2.)[2] The ALJ's summary of the medical evidence was cursory and only

---

[2] Regarding medical records dated February 10, 2005, through August 8, 2017, the Appeals Council stated: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (AR 2.) When the Appeals Council considers new evidence in reaching its determination, that evidence is part of the Administrative Record and this Court must

supported by substantial evidence as to some of Wyatt's impairments. For example, it was legitimate to find that Wyatt typically exhibited mild symptoms from her asthma and COPD and had only episodic mild edema. However, the ALJ did not fully and accurately characterize the medical records documenting Wyatt's Crohn's disease, which she testified was the primary source of the symptoms that precluded her from working. (AR 174.)

Wyatt was first diagnosed with Crohn's disease in 2005, after exhibiting symptoms for many years. (AR 51, 71, 473-74.) In 2009 and 2010, Wyatt's symptoms were up and down, but she consistently reported diarrhea and frequent bowel movements, up to 9 or 10 per day. (AR 73, 77, 81, 83, 85, 87, 88, 90, 92, 97, 98.) The record shows Wyatt continued to have chronic or "baseline" diarrhea through 2017, even when her Crohn's disease was noted to be stable or improved. (AR 100, 105, 160, 441, 469, 473, 489, 495, 497, 502, 505, 510, 703, 520, 685, 713, 854.) Throughout 2011 and into 2012, Wyatt reported flu-like symptoms, including chronic fatigue, stemming from her Crohn's disease. (AR 105, 107, 618, 637, 646, 649.) She had subsequent reports and treatment for Crohn's flare-ups, including flu-like symptoms. (AR 510, 690, 713.) She reported bowel incontinence in March 2012 (AR 470), January 2015 (AR 523), and March 2017 (AR 857), and explosive diarrhea in August 2017. (AR154.) Over the years, Wyatt consistently described abdominal pain and exhibited tenderness upon exam. (AR 52, 64-65, 70, 73, 83, 86, 96, 98, 105, 442, 469, 471, 473, 510, 520, 854.) Since 2005, repeated diagnostic imaging documented active Crohn's disease. (AR 68, 76, 478, 518, 557, 860.) Because Wyatt's Crohn's disease was

---

consider it. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The Appeals Council assessed the merits of the newly-submitted medical records by evaluating whether they would change the ALJ's finding that Wyatt was not disabled; therefore, it necessarily "considered" the evidence despite its statement to the contrary. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (denial of review is on the merits when based on finding that newly-submitted material did not warrant a different outcome); *Patrick K.G. v. Saul*, No. SA CV 18-01156-RAO, 2019 WL 2613456, at *9 (C.D. Cal. June 26, 2019) (finding determination that evidence would not change the outcome requires Appeals Council to "consider" the evidence); *Reyes v. Comm'r of Soc. Sec. Admin.*, No. CV-17-08192-PCT-SMB, 2019 WL 2098755, at *3 (D. Ariz. May 14, 2019) (finding evidence submitted to Appeals Council was part of the record because the council "made a finding about the merits of the additional evidence and considered whether it would change the outcome of the decision."). Therefore, in reviewing the ALJ's decision, this Court must consider the medical records submitted to the Appeals Council that pre-dated the ALJ's decision (records dated after the ALJ's decision were not considered by the Appeals Council (AR 2)).

not fully controllable with medication, she had bowel resection surgeries in 2010 and 2017. (AR 83, 85, 87, 135, 453, 850.) Wyatt noted a weight loss of fourteen pounds prior to the 2010 surgery and weight loss again in 2017. (AR 88, 160, 763.) With respect to Crohn's disease, the record as a whole supports Wyatt's symptom testimony of chronic pain and diarrhea, accompanied by fatigue and abdominal tenderness. Further, there is longitudinal objective medical evidence of active Crohn's disease leading to surgeries. The Court finds there was not substantial evidence supporting the ALJ's finding that Wyatt's symptom testimony was inconsistent with the record or the medical examinations.

Next, the ALJ relied on the absence of medical opinions consistent with Wyatt's symptom testimony. (AR 30.) At the time of the ALJ's decision, the only medical opinions were those of the State agency consultants. In 2015, both of those doctors concluded Wyatt could do medium exertion level work but was limited in her exposure to pulmonary irritants. (AR 204, 229.) The ALJ stated that he gave their opinions only partial weight, concluding the overall record indicated Wyatt was limited to light exertion work but she had no limitation to working around irritants. (AR 31.)

Wyatt submitted 2017 medical opinions to the Appeals Council from her primary care physician, Dr. Lee, and her treating gastroenterologist, Dr. Dinning. In offering his opinion, Dr. Dinning noted that he had been treating Wyatt for eight years and he discussed her Crohn's disease over the course of those years. (AR 8.) Dr. Lee stated that Wyatt's limitations set forth in her opinion had been present since 2010. (AR 15.) The Appeals Council concluded these opinions were not related to the period prior to the ALJ's August 25, 2017 decision. (AR 2.) This was error. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (2011) (holding that an after-dated medical opinion is relevant to an earlier period if the doctor treated the claimant during that time or, if it is related to a medical condition already present during the earlier period). Because Drs. Lee and Dinning treated Wyatt during the relevant period and offered opinions about medical conditions present prior to August 2017, this Court may consider their opinion evidence in reviewing the ALJ's decision. *See id.* at 1232-33.

Dr. Lee opined that, during an 8-hour work day, Wyatt could sit for one hour, stand for 15 minutes, and walk for 10 minutes; during the remainder of the day, she would be resting. (AR 11.) The doctor premised her opinion, in part, on Wyatt's history of Crohn's disease including chronic diarrhea. (AR 15.) Dr. Dinning opined that Wyatt was "near incapacitated" due to abdominal pain and diarrhea, could not sit for extended periods, required frequent trips to the bathroom (up to several times an hour), and experienced bowel incontinence. (AR 8.) These opinions were consistent with Wyatt's symptom testimony. Thus, the ALJ's finding otherwise was not legitimate or supported by substantial evidence.

The Court finds the ALJ failed to provide clear and convincing reasons supported by substantial evidence to reject Wyatt's symptom testimony.

**Crohn's Disease**

Wyatt argues the ALJ's RFC finding failed to account for her severe diarrhea that would cause her to be off-task unexpectedly numerous times a day. The ALJ did not discuss Wyatt's diarrhea specifically but cited the following record evidence related to her symptoms caused by Crohn's disease: October 2010, Wyatt denied incontinence (AR 39 (citing AR 652)); June 2015, surgery results consistent with active inflammatory bowel disease (AR 39-40 (citing AR 724)); July 2015, Crohn's disease stable on current treatment (AR 30 (citing AR 722)); January 2016, active Crohn's disease (*Id.* (citing AR 781)); February 2016, Crohn's disease stable (*Id.* (citing AR 727)).

Above, the Court considered the entirety of the record with respect to Wyatt's symptom testimony, including her diarrhea and incontinence. The Court found the ALJ's rejection of Wyatt's testimony regarding her Crohn's disease symptoms was not supported by substantial evidence. Further, two of Wyatt's treating physicians opined that she was unable to maintain employment due, in part, to the symptoms of Crohn's disease, including severe diarrhea. (AR 8, 10-15.) Because the ALJ did not account for all of Wyatt's limitations imposed by her Crohn's disease, specifically time she would be off-task due to frequent diarrhea, he erred. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1164 (9th Cir. 2008) (citing SSR 96-8p requiring ALJs to consider all limitations imposed by an impairment).

**CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004).

The ALJ erred in discounting Wyatt's symptom testimony without providing clear and convincing reasons and in failing to account for limitations imposed by a symptom of Wyatt's Crohn's disease, diarrhea. Wyatt requests that the Court credit as true her symptom testimony and remand for an award of benefits. Application of the credit as true rule is not warranted if further proceedings would be useful or there are outstanding issues that must be resolved. *See Leon v. Berryhill*, 800 F.3d 1041, 1047 (9th Cir. 2017). Here, there are outstanding issues to be resolved on remand.

Wyatt's symptom testimony does not correlate directly to a finding of disability based on the current record evidence. Further, substantial new evidence, both medical records and medical opinions, was submitted to the Appeals Council. The Council erroneously did not consider the medical opinions of Wyatt's treating physicians and considered, but articulated an intent to exclude from consideration, the medical records. *See supra* note 2. "Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider [his] decision in light of the additional evidence." *Taylor*, 659 F.3d at 1233, 1235. Finally, Wyatt alleged an onset date of 2008. There are no medical records from that year and there is a gap in the record from September 2005 (AR 71) to July 2009 (AR 73). Additionally, Dr. Lee's opinion stated that it reached back only to 2010 (AR 15), and it appears Dr. Dinning began treating Wyatt some time after 2009. Even if Wyatt is found to be disabled, the ALJ must conduct further proceedings to determine the onset date. *See*

*Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (remand is proper when onset date remains an outstanding issue).

Accordingly,

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 11th day of July, 2019.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge